UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

Case No.: 1:24-cv-21990-CMA

ADAM ARASTEH,

    Plaintiff,

vs.

LUXURBAN HOTELS, INC.,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
AND MOTION TO STRIKE DEMAND FOR PUNITIVE DAMAGES AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

Defendant, Luxurban Hotels, Inc. ("LuxUrban"), by and through its undersigned counsel, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby moves the Court for an order dismissing the Amended Complaint (D.E. 32), which asserts one count for violation of 42 U.S.C. §1981 and one count for intentional infliction of emotional distress, and striking Plaintiff's, Adam Arasteh's ("Plaintiff), demand for punitive damages, and states as follows:

**I.    Introduction & Motion**

In response to LuxUrban's Motion to Dismiss the initial Complaint, Plaintiff filed an Amended Complaint containing the identical claims pled in the initial Complaint. (Compare D.E. 1 and D.E. 32). While Plaintiff predicated the initial Complaint upon a single interaction between Plaintiff and one of LuxUrban's unidentified employees, Plaintiff now predicates his Amended Complaint on loosely connected interactions with different LuxUrban employees spanning several days. Additionally, Plaintiff adds some threadbare recitals of the elements of the causes of action that were nonexistent in the initial Complaint.

Specifically, the Plaintiff's alleges:

On June 24, 2023, the Plaintiff, a dark-skinned racial minority, checked into a standard room at the Townhouse Hotel ("Hotel") at 150 20th Street, Miami Beach, FL 33139. Amended Complaint, ¶13. Then, two days into his stay, on June 26, 2023, Plaintiff requested a change from his standard room to one of the Hotel's penthouse rooms. Amended Complaint, ¶16. After LuxUrban's Front Desk Employee accommodated Plaintiff's request and upgraded Plaintiff to the penthouse room, Amended Complaint, ¶17, Plaintiff complained of the existence of insects in the penthouse room to LuxUrban's Overnight Manager. Amended Complaint, ¶18. Plaintiff's complaint about the insects led to an altercation between Plaintiff and the Overnight Manager wherein the Overnight Manager allegedly told the Plaintiff that he was ugly, he physically threatened him, made racial slurs, and then told the Plaintiff "to go the f**ck back to his room" and to "go upstairs to his room." Amended Complaint, ¶¶20-22.

In the Amended Complaint, Plaintiff no longer alleges that the *Overnight Manager* - the employee that Plaintiff alleges expressed racial slurs directed to Plaintiff - intended to cause or did cause Plaintiff's alleged contractual injury. Instead, Plaintiff now alleges that, *on the following day*, a different employee, LuxUrban's *Daytime Manager*, allegedly caused Plaintiff's contractual injury by informing Plaintiff that he could no longer remain as a guest in the Hotel. Amended Complaint, ¶28.

Based on these allegations all woven together, Plaintiff attempts for a second time to state a claim against LuxUrban for intentional discrimination in violation of 42 U.S.C. § 1981 and intentional infliction of emotional distress. As discussed herein, the court must dismiss the Amended Complaint.

## II. Memorandum of Law

**A.** *Legal Standard.*

A motion to dismiss challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court must eliminate allegations that are merely legal conclusions and accept well-pleaded factual allegations of the complaint as true in order to determine whether they plausibly give rise to an entitlement to relief. *American Dental Association v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). The purpose of this requirement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. While detailed factual allegations are not required, Plaintiff must offer more than labels and conclusions or a formulaic recitation of the elements. *Ashcroft*, at 678. "Dismissal, however, is appropriate where 'on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *Casey v. City of Miami Beach*, 789 F. Supp. 2d 1318, 1320 (S.D. Fla. 2011).

A claim must include a short, plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). To satisfy the short, plain statement requirement of his claim pursuant to Rule 8 of the Federal Rules of Civil Procedure, Plaintiff must allege each element necessary to establish a prima facie claim to show that he is entitled to relief. *Hyde v. Storelink Retail Group*, Inc., 2007 WL 1831683, *3 (M.D. Fla. 2007). Plaintiff's claims fail if he is unable to establish a prima facie case. *Pace v. Southern Ry. Sys.*, 701 F. 2d 1383 (11th Cir. 1983).

Plaintiff's failure to set forth factual allegations that support a prima facie case, providing LuxUrban with adequate notice of the claim and the grounds that support it, is fatal to his claims and the Amended Complaint is properly dismissed. *Hyde*, 2007 WL 1831683 *4 (M.D. Fla. 2007).

**B.**     ***Plaintiff fails to state a claim of Intentional Discrimination under 42 U.S.C. §1981.***

42 U.S.C. §1981 offers relief when racial discrimination impairs an existing contractual relationship.  *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006).  To state a claim under §1981 a plaintiff must demonstrate "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute*." Jackson v. BellSouth Telecommunications*, 372 F. 3d 1250, 1270 (11th Cir. 2004).  To make out a prima facie case, "the plaintiff must point to comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021) (citations omitted). A plaintiff "also bears the burden of showing that race was a but-for cause of his injury." *Id.* at 1294.

In *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F. 3d 886, 891 (11th Cir. 2007), the Eleventh Circuit clarified that, "in the retail context, the plaintiff must demonstrate the *loss* of an actual contract interest." *Id.* (emphasis in original).  "[A] viable §1981 claim in the retail context 'must allege that the plaintiff was actually prevented, from making a purchase or receiving service after attempting to do so. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 359 (5th Cir. 2003).

While Plaintiff's conclusory allegations state that he was deprived of his right to make and enforce contracts, the scant specific allegations squarely contradict those allegations. Plaintiff alleges:

4

- On June 24, 2023, Mr. Arasteh checked into a standard room at the Hotel. ¶13.

- As a guest of the Hotel, Mr. Arasteh entered into a contractual agreement with the Defendant by paying money for the benefit of staying as a guest in the Hotel. ¶14.

- On June 26, 2023, Mr. Arasteh requested an upgrade from Defendant's Front Desk Employee from his standard room to one of the Hotel's penthouse rooms, under the same terms as his original contract with the Hotel. ¶15.

- Defendant's Front Desk Employee approved Mr. Arasteh's upgrade. ¶16.

- Mr. Arasteh recognized that the room was infested with cockroaches and bedbugs. Mr. Arasteh addressed the issue with Defendant's Overnight Manager on duty at the time, a white male, advising that he had bites on his legs due to the bugs. ¶ 17.

- The Overnight Manager told the Plaintiff "to go the f**ck back to his room" and to "go upstairs to his room." Amended Complaint, ¶¶20-22.

Accordingly, not only do the allegations in the Amended Complaint establish that Plaintiff was permitted to contract with LuxUrban for a standard room at the Hotel (notwithstanding his race), but the allegations also establish that Plaintiff was permitted to modify his contract by upgrading his standard room to a penthouse room during his stay at the Hotel (notwithstanding his race). Thus, Plaintiff was not prevented from making a purchase and was even allowed to modify his purchase from LuxUrban. *See Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001)(collecting cases and concluding that "[v]irtually all federal courts that have analyzed section 1981 claims in the retail merchandise context have required the plaintiff to show that he was *actually prevented* from making a purchase")(emphasis added).

Moreover, although Plaintiff now alleges in a conclusory fashion that "but for Plaintiff's race, he would not have been told to leave the Hotel immediately," Amended Complaint ¶32, this threadbare recital of the elements of a cause of action, supported by Plaintiff's mere conclusory statements does not cure Plaintiff's previous pleading deficiencies. *Ashcroft*, 556 U.S. at 678; *see also Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327 (2020)(requiring

5

§1981 plaintiffs to plead but-for causation between animus and injury initially). In *Comcast,* the Supreme Court held that to plead a Section 1981 discrimination claim at the motion to dismiss stage, the "plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Id*. at 341; *AHE Realty Assoc., LLC v. Miami-Dade County, Florida*, 320 F.spp.3d 1322, 1331 (S.D. Fla. 2018)("In a civil rights action, more than mere conclusory allegations are required in order for a complaint to survive dismissal "" Further, Section 1981 claims are to be interpreted "narrowly" following *Comcast. Domino v. Kentucky Fried Chicken*, 2020 WL 5847306, *2 (N.D. CA. Oct. 1, 2020).

Here, the Plaintiff alleges specific ***non-discriminatory*** treatment by LuxUrban who agreed to sell Plaintiff a room in the Hotel (Amended Complaint, ¶¶13-15), followed by additional specific ***non-discriminatory*** treatment by LuxUrban who agreed to honor a request by Plaintiff to upgrade his room from a standard room to one of the Hotels' penthouse rooms under the same terms as the original contract (Amended Complaint,¶¶16-17), followed by very specific and detailed allegations surrounding a confrontation with the Overnight Manager who allegedly uttered racial slurs directed to Plaintiff following Plaintiff's complaint about the presence of insects in the Penthouse Room which also did ***not*** result in any disparate treatment or change in the Plaintiff's hotel booking (Amended Complaint, ¶¶18-26).

Then, in nothing short of broad stroked conclusions, Plaintiff attempts to tie the detailed facts leading to the remarks made by the Overnight Manager to the actions of the Daytime Manager who had no part in any of the actions from the prior few days' stay at the Hotel and to whom none of the racial slurs are attributed. Amended Complaint, ¶¶27-32. Plaintiff's entire case rests on the conclusory allegation that the "Daytime Manger was aware that Defendant's Overnight Manager made racial comments to the Plaintiff… [that he]… took actions based on discriminatory

6

intent," (Amended Complaint, ¶28), and that "[b]ut for Plaintiff's race, he would not have been told to leave the Hotel immediately." (Amended Complaint, ¶32). *Twombly* and *Ashcroft* require more than merely connecting the dots with conclusory allegations. Rule 8 does not require "detailed factual allegations," but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation. *Twombly, 550 U.S. at 555* Courts need not credit "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Rankin v. Bd. of Regents of Univ. Sys. of Georgia,* 2018 WL 1974995, at * 1 (11th Cir. 2018), *citing Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Threading the racial slurs made by the Overnight Manager who took no adverse action against the Plaintiff (and did not even express any desire that the Plaintiff be evicted or any intention to do so) to the Daytime Manager (who is not alleged to have uttered a single racial slur or to have engaged in any of the previous evening's confrontation) is the fatal defect in the Amended Complaint. Because it was the Daytime Manager who allegedly informed Plaintiff that "he could no longer remain as a guest in the Hotel and required him to leave," Amended Complaint, ¶27, Plaintiff can only survive a motion to dismiss if he can allege a but-for causation between animus and injury initially. The sole allegation threading this together is Plaintiff's bare bones statement that the Daytime Manager "was aware that [LuxUrban's] Overnight Manager made racial comments to the Plaintiff …and took actions based on discriminatory intent." Amended Complaint, ¶28, and that "[b]ut-for Plaintiff's race, he would not have been told to leave the Hotel." Amended Complaint, ¶32. This is insufficient as a matter of law. *See Ashcroft*, 556 U.S. at 678 (threadbare recitals of the elements of a cause of action supported by merely conclusory statements must be ignored and are legally insufficient to plead a viable claim).

Moreover, in applying the but-for causation test under §1981, courts have held that a claim

7

is rendered implausible if the complaint itself identifies an "independent, non-discriminatory reason" for the alleged contractual impairment. *Banner Health*, 515 F. Supp. 3d 1026, 1035 (D. Ariz. 2021)(quoting *Astre v. McQuaid*, 804 F. App'x 665, 667 (9th Cir. 2020)). In *Banner Health*, a doctor of Arabian descent brought a suit under various theories, including §1981. He claimed his Physicians Services Agreement (PSA) with a network of hospitals was revoked on the basis of his race. The district court dismissed the §1981 claim after determining that the complaint identified multiple independent, non-discriminatory reasons for the alleged impairment.

For instance, the *Banner Health* plaintiff alleged the defendant doctors wanted to "make him an example" after he testified against them in a wrongful death case, and they were upset that he was the only doctor who "directly competed with them." The court ruled that these allegations gave rise to inferences that the plaintiff's alleged contractual impairments were caused by his adverse testimony and the jealousy of the other doctors - not just by his race. *Banner Health*, 515 F. Supp. 3d at 1036. *Astre,* 804 F. App'x. at 667 (upholding dismissal of Section 1981 claims where but-for causation not satisfied).

In support of its ruling, the *Banner Health* court looked to *Domino v. Kentucky Fried Chicken*, No., 2020 WL 5847306 (N.D. Cal. Oct. 1, 2020). There, the plaintiff alleged that a restaurant's employees used racial slurs and gave favorable treatment to a patron of a different race. The restaurant's manager allegedly said the plaintiff had complained about the chicken not being warm enough during a previous encounter. The manager added, "that's that N***** who walks in here looking at the food, and leaves without making a purchase." Citing *Comcast*, the district court held:

> "Plaintiff must plead that racial discrimination was the but-for cause of being denied service at the restaurant. Because Plaintiff alleges the employees were also *motivated by previous, personal interactions* with Plaintiff (complaints and refusal to purchase food), he fails to state a § 1981 claim." (Emphasis added). *Id.* at *2

Here, Plaintiff alleges that he checked into his standard hotel room. Plaintiff also asserts that, during his stay at the Hotel, he requested and was permitted to upgrade his standard hotel room to a penthouse room, notwithstanding LuxUrban's employee's knowledge of Plaintiff's race. Plaintiff alleges that it was only when he complained about the presence of insects in the penthouse room that an altercation ensued, and LuxUrban's Overnight Manager made a racial slur. Yet, Plaintiff does not allege that the alleged discriminator, the Overnight Manager, intended to cause, or did cause any contractual injury by terminating his reservation or requiring him to leave the Hotel. To the contrary, Plaintiff alleges that the Overnight Manager told the Plaintiff "to go the f**ck back to his room" and again to "go upstairs to his room." Amended Complaint, ¶22.

Lastly, Plaintiff fails to sufficiently allege comparators of a different race who were "similarly situated in all material respects" and were not subject to the same mistreatment. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1229 (11th Cir. 2019)(en banc). Plaintiff's allegations in the Amended Complaint are deficient to satisfy *Twombly* on this material element of the claim.

Plaintiff nowhere alleges that there were similarly situated individuals in all material respects who were not told to leave the Hotel after complaining to LuxUrban or its employees about the quality of rooms, including the existence of insects, and the resulting conduct. Instead, Plaintiff merely states that "Defendant made the discriminatory statements to Plaintiff while other non-colored guests…were permitted to enjoy their stay without having to endure the same or similar discrimination...or…required to leave the Hotel…". Amended Complaint, ¶34 and 35. On

9

the face of the allegations of the Amended Complaint, **all hotel guests** are not "similarly situated in all material respects" to Plaintiff[1].

Accordingly, Plaintiff fails to state a cognizable claim of discrimination for relief under Section 1981 because he has failed to show that LuxUrban intentionally discriminated against Plaintiff based on race *and* that the discrimination interfered with Plaintiff making or enforcing a contract, and that Plaintiff would not have suffered the loss but for his race.

LuxUrban would be remiss if it did not discuss the applicability of *Ziyadat v. Diamondback Hospitality Company,* 3 F.4th 1291 (11th Cir. 2021) to this case.  In *Zivadat,* the Eleventh Circuit Court of Appeals reversed the dismissal of a complaint alleging a 42 USC §1981 case brought by a hotel guest alleging race discrimination.  The Court addressed whether the plaintiff there sufficiently alleged comparators who were "similarly situated to him in all material respects." *Id. at* 1296.  The Court analyzed the allegations which stated that "Ziyadat is Arab and has a beard. He says that none of the other hotel guests around that afternoon looked Arab. And he claims that while he and Schneider were at the pool, the towel attendant treated the other guests 'pleasantly and cordially.'" *Id. at 1295.*  The Court further stated that the plaintiff *"*allege[d] that other, non-Arab hotel guests sat by the pool and acted similarly. In other words, they all engaged in the same basic conduct." *Id at 1297.*  The Court concluded that the plaintiff sufficiently alleged comparators "similarly situated in all material respects" with the "only material difference between him and the

---

[1] In *Lewis*, the Eleventh Circuit provided guidance as to what is considered a "similarly situated" comparator. *Lewis*, 918 F3d. at 1228.  A prime and relevant example is others who "will have engaged in the same basic conduct (or misconduct) as the plaintiff" *Id*. In this case, Plaintiff alleges that three days after checking in to the hotel, he was told to leave the hotel only *after* he complained to the Nighttime Manager about the insects in his room.  So, similarly situated comparators would not be *all* hotel guests, but would be other guests who complained about their rooms.

10

others at the pool was his race, and only he was evicted." *Id.* The Plaintiff's allegations in the Amended Complaint are far different and deficient to satisfy *Twombly* on this material element - similarly situated comparators – of the claim.

Last year, United States District Court Judge Beth Bloom applying *Ziyadat* in a §1981 case dismissed the complaint even where the plaintiff alleged more than simply that the "similarly situated" comparators were "non-black." *See Phillipeax v. Miami Apartments Investors, LLC,* Case No. 23-cv-21275 (September 1, 2023), 2023 WL 5720628 (S.D. Fla. 2023). In *Phillipeax*, the plaintiff alleged that following his filing of an ADA/FHA lawsuit, he was evicted from his apartment. He alleged that the defendants "did not evict similarly situated non-black, non-Haitian tenants who filed Complaints against them." *Id. at *3*. Judge Bloom, applying and distinguishing *Ziyadat* (where the plaintiff alleged specific facts supporting the allegations of the treatment of similarly situated comparators and racial animus, held that.the allegations (that the comparators were non-black and also "filed complaints") were insufficient and dismissed the Amended Complaint. *Id, citing Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020) ("[A] court considering a motion to dismiss generally accepts the non-moving party's allegations as true, a court is not required to credit 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'")

Next, Ziyadat is far different from this case with respect to the "but-for" causation pleading requirement. In *Ziyadat*, the Court analyzed the precise words alleged by Plaintiff to support the "but-for" causation element, which provided the basis upon which the Complaint stated a cause of action. In *Ziyadat,* the plaintiff alleged that the hotel towel attendant stated, "you don't look like you belong here" and asked, "what are you doing here?" *Id at* 1297. The Court concluded that "we think it a reasonable inference that the attendant's statements that Ziyadat didn't belong "here"

means that she thought he didn't belong *at the Westin* – and thus should be evicted." *Id.* Again, no such allegations are made in this case. In fact, the only words uttered by the Overnight Manager concerning Plaintiff's entitlement to remain at the LuxUrban hotel were the opposite of an intention to evict Plaintiff. The Overnight Manager actually advised the Plaintiff to return to his room. Amended Complaint, ¶20 and 22. There is no possible reasonable inference that the Overnight Manager's statement to Plaintiff to "return" to his room meant that he should be removed or evicted from the Hotel.

*Ziyadat* supports dismissal of the Amended Complaint.

**C.     *The Court Should Strike Plaintiff's Request for Punitive Damages*.**

Plaintiff also fails to adequately plead entitlement to punitive damages under §1981 or *otherwise*. A prevailing plaintiff in a cause of action under §1981 is entitled under the common law to punitive damages "under certain circumstances." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975). Punitive damages are available under the common law in an action under §1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983).

Moreover, "[t]he terms "malice" or "reckless indifference" pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). "Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'

Here, Plaintiff fails to allege any facts sufficient to support the requisite "malice" or "reckless indifference" required to sustain a claim for punitive damages under Section 1981. In fact, *no* facts are alleged in the Amended Complaint that would support any act or omission on the

12

part of LuxUrban that rises to the level of malice or reckless indifference. Rather, Plaintiff simply asserts an entitlement to punitive damages without expressing any valid basis for such a demand.

Furthermore, punitive damages are unavailable where, as here, Plaintiff fails to plead that anyone with sufficient "managerial capacity," discriminated against her. Plaintiff alleges only that the Overnight Manger of the Hotel and Daytime Manger of the Hotel took any action against Plaintiff. The Eleventh Circuit has made it clear that "to get punitive damages, a [] plaintiff must show either that the discriminating employee was high[] up in the corporate hierarchy or that higher management countenanced or approved his behavior." *Dudley v. Wal-Mart Stores. Inc.,* 166 F.3d 1317, 1323 (11th Cir. 1999) (internal quotations omitted) (*citing Reynolds v. CSX Transp. Inc.* 115 F.3d 860, 869 (11th Cir. 1997), vacated on other grounds. 118 S. Ct. 2364 (1998)).

LuxUrban, is a "for-profit company which is listed on the NASDAQ exchange under the ticker symbol LUXH." Amended Complaint, ¶9. LuxUrban is "in the business of, *inter alia,* acquiring and managing a portfolio of hotels throughout the Unted States." Amended Complaint, ¶10. Plaintiff's entire claim is premised on the words and conduct of two local hotel managers (the Overnight and Daytime Mangers) who are clearly not sufficiently high up the corporate hierarchy for purposes of entitlement to punitive damages. *See Reynolds*, 115 F,3d at 869 (holding that first-level supervisor in one office of large corporation not part of higher management for imposition of punitive damages on employer). As the Supreme Court has held, although the alleged discriminator "perhaps need not be the employer's top management, officers, or directors," he nevertheless must be sufficiently high enough in the organization to be "important." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 543, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

In *Dudley*, the Eleventh Circuit held that the store manager in one store of a multi-store chain like Wal-Mart does not qualify as sufficiently high enough in the chain of command to be

considered higher management for the establishment of punitive damages. *Dudley*, 166 F.3d at 1323; *see also Splunge v. Shoney's Inc*., 97 F. 3d 488, 491-92 (11th Cir. 1996) (holding that manager of single restaurant in multi-restaurant chain - and even his boss, the area supervisor - were not high enough in management for their actions to be imputed to the company for purposes of establishing punitive damages). This case is indistinguishable from either *Dudley* or *Splunge.*

**D.**     ***Plaintiff has failed to state a claim for Intentional Infliction of Emotional Distress.***

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *See Phillipeax,* *6, citing Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). Under Florida law, "[w]hether conduct is sufficiently 'outrageous' to state a claim for IIED is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (citing *Medina v. United Christian Evangelistic Ass'n*, No. 08-22111-CV-Cooke, 2009 WL 653857, at *4 (S.D. Fla. Mar. 9, 2009)); see *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) ("Whether conduct is outrageous enough to support a claim of [IIED] is a question of law, not a question of fact.") (citing *Gandy v. Trans World Comput. Tech. Grp.*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001)).

The allegations stated in Plaintiff's Amended Complaint are woefully deficient to meet this exacting standard. Even taking all of the allegations contained in the Amended Complaint as true, the unidentified employee's alleged conduct was not sufficiently "outrageous," as a matter of law, to meet the level of shocking conduct required to state a claim for intentional infliction of emotional distress as a matter of Florida law.

Whether a person's conduct is sufficiently outrageous to form the basis for a claim of intentional infliction of emotional distress a matter of law to be decided by the Court and is not a question of fact. *See, e.g., Vance v. Southern Bell Telephone and Telegraph*, 983 F.2d 1573, 1575, n. 7 (11th Cir. 1993); *Golden v. Complete Holdings*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993); *Gandy v. Trans World Computer Technology Group*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001). In Florida, this standard is very difficult to meet. *Id*. In fact, conduct must be exceedingly outrageous and reprehensible in order to form the basis for a claim of intentional infliction of emotional distress. *Golden v. Complete Holdings*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993).

Florida courts limit the boundaries of an action for intentional infliction of emotional distress. *See Watson v. Bally Mfg. Corp*., 844 F. Supp. 1533, 1536-37 (S.D. Fla. 1993). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*., citing *McCarson*, 467 So. 2d at 278-79. Florida courts utilize an exacting, carefully defined standard for "outrageous conduct" to maintain the exceedingly restricted scope of this designedly limited tort. All of the appellate decisions in this state addressing the tort of intentional infliction of emotional distress have clearly suggested that it be narrowly construed and applied only when the facts would be sufficient to arouse such overwhelming aversion in the average person that he or she would exclaim "Outrageous!" No decision has extended this tort to fact situations such as that presented here.

This tort is so limited in its application that it is virtually unrecognized under Florida law and has only withstood immediate dismissal under only the most extreme circumstances involving repeated verbal abuse coupled with repeated physical abuse. *DeShiro v. Branch*, 1996 WL 663974 (M.D. Fla. 1996); *Golden v. Complete Holdings, Inc*., 818 F. Supp. 1495, 1499 (M.D.Fla.1993);

*see also Fowler v. Taco Viva, Inc.,* 646 F. Supp. 152, 158 (S.D. Fla. 1986)(no cause of action where allegations of malice in employer's slanderous statements, intentional race discrimination in employment decisions, and harassment held insufficient to state a cause of action).

The United States District Court for the Southern District of Florida dismissed a similar claim by a plaintiff because he failed to meet the exacting standard to establish intentional infliction of emotional distress under Florida law. In *Brown v. Zaveri*, 164 F. Supp.2d 1354 (S.D. Fla. 2001), the plaintiff alleged, *inter alia*, that he was subjected to intentional racial discrimination and intentional infliction of emotional distress when he attempted to purchase lunch at a local McDonald's and was refused service by the restaurant's manager. Plaintiff alleged that, in addition to refusing the plaintiff service, the manager confronted and verbally berated him, including calling the plaintiff a "n...er." The plaintiff further alleged that the manager left the counter and ran towards him, assaulting him and threatening him. *Id*. at 1357. Applying the standard of outrageousness required under Florida law and the cases interpreting it, the Southern District Court found that the plaintiff's allegations, while outrageous, malicious and willful, failed to rise to the level of "outrageousness" necessary to state a claim for intentional infliction of emotional distress upon which relief could be granted and the court granted the defendant's motion to dismiss. *Id*. *See also Phillipeax,* *6 (holding that even being evicted for filing an ADA and FHA complaint with racial animus is not sufficiently outrageous that it was beyond the bounds of decency and utterly intolerable in a civilized community); *Phill Lay v, Roux Laboratories, Inc*., 379 So. 2d 451 (Fla. 1st DCA 1980)("Here, the alleged conduct of Kremer was that he "began to threaten her (Donesta Lay) with the loss of her job, then said defendant began using humiliating language, vicious verbal attacks, racial epithets and called plaintiff a 'nigger' " when an argument arose concerning a parking space. Although the alleged conduct is extremely reprehensible, we do not

16

think that the alleged conduct reaches the level of outrageousness and atrociousness . . . . Unfortunately, in our society, vulgarities and abusive language are commonplace when tempers flare and in this instance, the allegations are insufficient to serve as a predicate for the independent tort of intentional infliction of emotional distress.").

As in *Zaueri*, here, Plaintiff's allegations fall far short of asserting a cognizable claim for intentional infliction of emotional distress. Specifically, Plaintiff alleges that on one occasion he had an interaction with an employee at the Hotel where the employee allegedly cursed at him, made racial slurs, told him that he was ugly, and then told Plaintiff he was going to leave the Hotel to have sexual intercourse with his wife. Amended Complaint, ¶¶ 20-22. Courts have summarily rejected claims involving far more reprehensible allegations than those contained in Plaintiff's Amended Complaint. *See, e.g. Blount v. Sterling Healthcare Group, Inc.*, 934 F. Supp. 1365 (S.D. Fla. 1996)(finding supervisor's conduct, including hugging the plaintiff and rubbing the plaintiff's breasts to be "unacceptable and actionable in other respects" but not sufficiently outrageous to support a claim for intentional infliction of emotional distress); *Vernon v. Medical Management Assocs.*, 912 F. Supp. 1549, 1557-60 (S.D.Fla.1996)(unwanted and repeated touching of the buttocks, breasts, nipples and belly button, as well as repeated hugging, sexual comments and attempts to look up Plaintiff's skirt were not "outrageous" enough to withstand motion to dismiss); *Lawhon v. Kinney Shoe Corporation*, 1998 WL 182421 (M.D. Fla. 1998)(finding that supervisor's alleged constant verbal comments, expressions of sexual desire, and continuous touching did not rise to the requisite level of outrageousness and dismissing the plaintiff's intentional infliction of emotional distress).

The Eleventh Circuit concluded that hanging a "noose" over an African-American employee's workstation, subjecting plaintiff to a physical altercation, sabotaging plaintiff's phone,

17

and refusing to treat plaintiff equally in disciplinary proceedings were not sufficiently outrageous to sustain a cause of action). *Vance*, 983 F.2d at 1575. *See Fernandez*, 934 F. Supp. at 423 (referring to plaintiff as 'a sick old man,' or otherwise humiliating him in front of other employees by referring to his age or disability cannot, as a matter of law, be considered "outrageous" as that phrase is intended by Florida law"); *Blount*, 934 F. Supp. at 1371 (dismissing plaintiff's claim for intentional infliction of emotional distress despite evidence of both physical and verbal harassment); *Lay v. Roux Laboratories, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980)(employee failed to state a cause of action for intentional infliction of emotional distress when he alleged that co-employee used humiliating language, vicious verbal attacks, racial epithets and called plaintiff a "n...er"); *Bowling v. Blue Cross of Florida, Inc.*, 338 So. 2d 88, 88-89 (Fla. 1st DCA 1976) (dismissing, with prejudice, intentional infliction of emotional distress claim based on allegations that employer discharged plaintiffs based on false accusations of sexual relations between plaintiffs in the ladies lounge); *Food Fair, Inc. v. Anderson*, 382 So. 2d 150, 152 (Fla. 5th DCA 1980)(no cause of action when employer forced employee to sign statement admitting theft under threat of termination).

Plaintiff's allegations simply do not meet the standard for "outrageousness" required to maintain a claim for intentional infliction of emotional distress as a matter of law. *See, e.g., Zaveri*, 164 F. Supp. at 1363 (finding plaintiff's claim that McDonald's manager refused to serve him because of his race and called him a "n...er" failed to rise to the level of outrageousness necessary to state a claim for intentional infliction of emotional distress). Accordingly, Plaintiff's claim for intentional infliction of emotional distress must be dismissed.

### III.     CONCLUSION

In sum, for any and/or all of the foregoing reasons stated herein, pursuant to Fed.R.Civ.P. 12(b)(6), the Court should dismiss the Amended Complaint against LuxUrban.

### LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that the undersigned consulted with counsel for Plaintiff and has been informed that Plaintiff opposes the relief requested in this Motion.

Respectfully submitted,

ROSENTHAL LAW GROUP
2103 N. Commerce Parkway
Weston, FL  33326
954.384.9200
954.384.0017 Fax

By:/s/ Alex P. Rosenthal
    Alex P. Rosenthal
    Fla. Bar No. 815160
    alex@rosenthalcounsel.com
    Amanda Jassem Jones
    Fla. Bar No. 26260
    amanda@rosenthalcounsel.com