UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-21990-CIV-ALTONAGA/Reid

ADAM ARASTEH,

    Plaintiff,
v.

LUXURBAN HOTELS INC.,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, LuxUrban Hotels Inc.'s Motion to Dismiss Amended Complaint and Motion to Strike Demand for Punitive Damages [ECF No. 34], filed on September 3, 2024. Plaintiff, Adam Arasteh filed a Response [ECF No. 39]; to which Defendant filed a Reply [ECF No. 40]. The Court has carefully considered the Motion, the record, and the applicable law. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

This case arises from Plaintiff's stay at a hotel owned by Defendant, LuxUrban Hotels Inc., in June 2023. (*See generally* Am. Compl. [ECF No. 32]). Two days after checking into the hotel, Plaintiff requested an upgrade to a penthouse room. (*See id.* ¶¶ 13, 16–17). Upon entering his new room, Plaintiff discovered it was infested with cockroaches and bedbugs. (*See id.* ¶ 18). Plaintiff complained of the situation to the overnight hotel manager, who then allegedly made "highly offensive racial slurs and threats" to Plaintiff, a dark-skinned male. (*Id.* ¶ 20; *see also id.* ¶¶ 8,18). In the morning, the daytime manager — a different person, aware of the events of the previous night — kicked Plaintiff out of the hotel. (*See id.* ¶¶ 27–28).

On May 23, 2024, Plaintiff filed this lawsuit. (*See generally* Compl. [ECF No. 1]). Plaintiff

asserts claims of race-based discrimination under 42 U.S.C. section 1981 (Count I) (*see* Am. Compl. ¶¶ 37–50), and intentional infliction of emotional distress (Count II) (*see id.* ¶¶ 51–55). Plaintiff seeks compensatory and punitive damages on each claim. (*See id.* 7).[1] Defendant moves to dismiss the Amended Complaint for failure to state claims for relief, and to strike Plaintiff's demand for punitive damages. (*See generally* Mot.).

## II. LEGAL STANDARDS

***Motion to Dismiss.*** "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," the claimant must "plead[] factual content that allows the court to draw the reasonable inference that the [petitioner] is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*,

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the claimant and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

*Motion to Strike.* Under Federal Rule of Civil Procedure 12(f):

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

   (1) on its own; or

   (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). "A motion to strike is intended to . . . remov[e] irrelevant or otherwise confusing materials." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013) (citations omitted). Thus, "[m]otions to strike generally are disfavored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861-Civ, 2005 WL 975773, at *11 (S.D. Fla. Mar. 4, 2005) (alteration added; quotation marks omitted).

### III. DISCUSSION

**A. Count I: Race-Based Discrimination under 42 U.S.C. Section 1981**

*Failure to State a Claim.* Defendant argues Plaintiff fails to state a claim of discrimination under section 1981 because he fails to plead: (1) "he was deprived of his right to make and enforce contracts" with Defendant; and (2) he would not have suffered his injury "but for his race[.]" (Mot. 4, 10 (alteration added); *see also id.* 4–12). Plaintiff insists he "has adequately alleged [a claim

3

of] direct intentional racial discrimination." (Resp. 7; *see also generally id.*). The Court agrees with Plaintiff.

Under 42 U.S.C. section 1981, which extends to "impairment by nongovernmental discrimination[,]" *id.* § 1981(c) (alteration added), "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens" *id.* § 1981 (a) (alterations added). To state a claim under section 1981, "plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004) (citation and footnote call number omitted).

Section 1981 most frequently arises in the employment discrimination context, *see Walker v. Park Ave. Bank*, No. 07-cv-2118, 2008 WL 842432, at *2 (N.D. Ga. Mar. 28, 2008), but the statute also applies to "claims brought by customers against commercial establishments[,]" *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (alteration added). "[T]here is a significant distinction between employment agreements and retail transactions for the purposes of [section] 1981[;]" thus, in the consumer context "the plaintiff must demonstrate the loss of an actual contract interest." *Id.* at 891–92 (alteration adopted; other alterations added; quotation marks and citation omitted). This is because "[s]ection 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process." *Id.* at 892 (alteration added).

Even under the narrower section 1981 standard in the consumer context, Plaintiff's allegations are sufficient to state a claim. The Amended Complaint states the overnight manager

at one of Defendant's hotels spewed racial slurs and threats at Plaintiff, "a dark-skinned, racial minority male[;]" and the daytime manager, aware of what ensued the night before, forcibly removed Plaintiff from the premises before the end of his stay. (Am. Compl. ¶ 8 (alteration added); *see also id.* ¶¶ 8, 20–22, 27–28).

Defendant does not dispute Plaintiff is a member of a racial minority. (*See generally* Mot.). Rather, Defendant insists that Plaintiff fails to plausibly allege "he was deprived of his right to make and enforce contracts" (*id.* 4), and even if he had, that Plaintiff fails to connect any alleged racial discrimination to a deprivation of a contract interest with Defendant (*see id.* 5–7). The Court disagrees.

First, Plaintiff sufficiently "demonstrate[s] the loss of an actual contractual interest." *Kinnon*, 490 F.3d at 892 (alteration adopted; other alteration added; quotation marks and citation omitted). Defendant asserts that Plaintiff was not deprived of his contract interest because he was able to purchase a room at the hotel and was even able to upgrade his standard room to a penthouse room. (*See* Mot. 5). True, but Plaintiff was then forcibly removed from the hotel, preventing him from "mak[ing] or enforc[ing] a contract with" Defendant. (Am. Compl. ¶ 27 (alterations added)). While stating racial harassment occurred during the contracting process would not be sufficient to state a claim under section 1981, Plaintiff sufficiently alleges he was prevented from receiving the full extent of his service after attempting to do so. *See, e.g.*, *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358–59 (5th Cir. 2003) (citation omitted); *see also Kinnon*, 490 F.3d at 892; (*see generally* Am. Compl.).

Second, Plaintiff adequately states Defendant deprived him of this contract interest because of racial discrimination. (*See generally* Am. Compl.). Defendant critiques Plaintiff's allegations supporting this prong, asserting "[t]he sole allegation threading this together is Plaintiff's bare

5

bones statement that the [d]aytime [m]anager was aware that [Defendant's] [o]vernight [m]anager made racial comments to [] Plaintiff and took actions based on discriminatory intent[][,] and that but-for Plaintiff's race, he would not have been told to leave the [h]otel." (Mot. 7 (alterations added; quotation marks and citations omitted)). According to Defendant, because the daytime manager, who forced Plaintiff to leave the hotel, uttered no racial slurs to Plaintiff, Plaintiff fails to show racial discrimination caused his removal from the hotel. (*See id.*).

The Court agrees with Plaintiff that this argument is guided by "disjointed logic[.]" (Resp. 12 (alteration added)). Under a cat's paw theory, causation may be established between racial animus and a contractual impairment if the "discriminatory conduct causes a decisionmaking employee to take an injurious action against the plaintiff." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1298 (11th Cir. 2021) (citation omitted). Plaintiff's allegation that "Defendant's [d]aytime [m]anager was aware that Defendant's [o]vernight [m]anager made racial comments to [] Plaintiff" when he forcibly removed Plaintiff from the hotel, makes it plausible that the overnight manager's racial animus influenced the daytime manager's decision. Therefore, the Amended Complaint sufficiently states Plaintiff's removal was "based on discriminatory racial intent." (Am. Compl. ¶ 28 (alterations added)).

While Defendant correctly states that "the cat's paw theory does not apply merely because a decisionmaker is *aware* of a non-decisionmaker's racial animus and then makes a decision[,]" (Reply 3 (alteration added; emphasis in original)), all that is required of Plaintiff at this stage is that he state facts that, if true, make Plaintiff's entitlement to relief plausible. *See Brooks*, 116 F.3d at 1369. For now, then, Plaintiff satisfies this burden.

Defendant makes additional unconvincing arguments attacking causation. Defendant seems to argue Plaintiff can only state a claim "if he can allege a but-for causation between animus

6

and injury" (Mot. 7; *see also id.* 5–6, 8), and the Amended Complaint "identifies an independent, non-discriminatory reason for the alleged contractual impairment" (*id.* 8 (quotation marks omitted; citing *Sharifi Takieh v. Banner Health*, 515 F. Supp. 3d 1026, 1035 (D. Ariz. 2021))). But, as Plaintiff notes, Defendant fails to identify in the Amended Complaint any non-racial motivated reason why Plaintiff was kicked out of the hotel. (*See* Resp. 12). Thus, but-for causation between the racial animus and the contractual impairment can be presumed from Plaintiff's allegations.

Defendant also argues Plaintiff "fails to sufficiently allege comparators of a different race who were 'similarly situated in all material respects' and were not subject to the same mistreatment." (Mot. 9 (citing *Lewis v. City of Union City*, 918 F.3d 1213, 1229 (11th Cir. 2019) (*en banc*)); *see also* Reply 5–6). A plaintiff need not identify comparators to "state[] a plausible claim for [direct] discrimination under [section] 1981." *Gregori v. Hometown Foods USA, LLC*, No. 23-cv-23356, 2024 WL 474374, at *3 (S.D. Fla. Feb. 7, 2024) (alterations added); (*see also* Resp. 8). Defendant identifies a slew of cases that it maintains reject *Gregori*'s holding and require allegations of similarly situated comparators. (*See* Reply 5–6 (citing *Caraway v. Sec'y, U.S. Dep't of Transp.*, 550 F. App'x 704, 710 (11th Cir. 2013); *Lee v. Geo Secure Servs., LLC*, No. 22-cv-60689, 2022 WL 17740272, at *9–10 (S.D. Fla. Nov. 16, 2022), *report and recommendation adopted*, 2022 WL 17736219 (S.D. Fla. Dec. 16, 2022); *Holmes v. City of Fort Pierce Fla.*, No. 18-cv-14461, 2019 WL 13257013 (S.D. Fla. May 29, 2019); *Henderson v. Dade Cnty. Police Benevolent Ass'n, Inc.*, No. 14-20321-Civ, 2014 WL 3591600, at *7 (S.D. Fla. July 18, 2014); *Henley v. Turner Broadcasting Sys., Inc.*, 267 F. Supp. 3d 1341, 1353 (N.D. Ga. 2017))). Those cases all dealt with claims of disparate treatment, which is not at issue here.

Thus, Plaintiff sufficiently pleads racial discrimination caused his removal from the hotel, impeding his contractual interest with Defendant.

*Punitive Damages.* Defendant additionally requests, if the Court does not dismiss Count I, that the Court strike Plaintiff's demand for punitive damages. (*See* Mot. 12–14). According to Defendant, Plaintiff "fails to allege . . . the requisite 'malice' or 'reckless indifference' required to sustain a claim for punitive damages under [s]ection 1981." (*Id.* 12 (alteration added)). Plaintiff insists he adequately pleads that "Defendant's actions were malicious, recklessly indifferent, were made with an intent to harm, and did harm [] Plaintiff." (Resp. 15 (alteration added)). The Court agrees with Defendant and explains.

To recover punitive damages, "the plaintiff must come forward with substantial evidence that the [defendant] acted with actual malice or reckless indifference to his federally protected rights." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1280 (11th Cir. 2008) (alteration added; citation omitted). "Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of one's actions.'" *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999) (alteration adopted; quotation marks and citations omitted). "Malice or reckless indifference is established by a showing that the [defendant] discriminated in the face of the knowledge that its actions would violate federal law." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002) (alteration added; citation omitted).

Plaintiff's allegations are specific to the two hotel managers' conduct, but he claims Defendant is vicariously liable for that conduct through the theory of *respondeat superior*. (*See generally* Am. Compl.). The problem is, at least in employment discrimination controversies, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with [section] 1981." *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 901 (11th Cir. 2011) (alteration adopted;

8

other alteration added; quotation marks, citation, and footnote call number omitted); (*see also* Mot. 13).

Plaintiff provides no explanation of why that standard should not extend to discrimination controversies arising out of consumer transactions. (*See generally* Am. Compl.; Resp.). Nor does he allege the managers "w[ere] high up the corporate hierarchy" or that "higher management countenanced or approved [their] behavior." *Ash*, 664 F.3d at 900–01 (alteration adopted; quotation marks and citation omitted) (stating "punitive damages are available only if" either of those things are true); *see also Moore v. MSB of Destin, Inc.*, No. 23-cv-6790, 2023 WL 4743276, at *4 (N.D. Fla. July 11, 2023) (striking a claim for punitive damages on a *motion to dismiss* because the complaint did not "explain where [the discriminating employee] is in the corporate hierarchy, nor [] allege that anyone higher-up in [d]efendant's management countenanced or approved his acts and omissions" (alterations added)); *see also Splunge v. Shoney's Inc.*, 97 F.3d 488, 492 (11th Cir. 1996) (holding that a supervisor of multiple restaurants in a restaurant chain was not high enough on the corporate hierarchy to show the defendant corporation "acted with the state of mind required for the imposition of punitive damages").

Thus, the Court strikes Plaintiff's demand for punitive damages as insufficiently alleged.

### B. Count II: Intentional Infliction of Emotional Distress

At Count II, Plaintiff states a claim of intentional infliction of emotional distress ("IIED"). (*See* Am. Compl. ¶¶ 51–55). Defendant asserts Plaintiff's allegations are "woefully deficient" to state a claim for IIED, a "tort [that] is so limited in its application that it is virtually unrecognized under Florida law[.]" (Mot. 14–15 (alterations added; citing *Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 158 (S.D. Fla. 1986) (finding allegations of intentional race discrimination and harassment insufficient to state a claim of IIED); other citations omitted)). Plaintiff recognizes he "has a high

burden to overcome to ultimately prove his claim for IIED[,]" but argues he states enough to plead the claim to survive a motion to dismiss. (Resp. 18 (alteration added)). Here, the Court agrees with Defendant.

To prove IIED, a plaintiff must show:

> (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;
>
> (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
>
> (3) the conduct caused emotion [sic] distress; and
>
> (4) the emotional distress was severe.

*LeGrande v. Emmanuel*, 889 So. 2d 991, 994–95 (Fla. 3d DCA 2004) (citation omitted). "Under Florida law, whether [] conduct is sufficiently outrageous and intolerable as to form the basis for a claim of [IIED] is *a matter of law for the court*, not a question of fact." *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499–1500 (M.D. Fla. 1993) (alterations added; emphasis in original; citing *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)).

Florida courts apply "an extremely high standard" to determine whether conduct was "outrageous." *Cooper v. Empower U, Inc.*, 603 F. Supp. 3d 1317, 1322 (S.D. Fla. 2022) (quotation marks and citation omitted). "[M]ere insults, indignities, threats, or false allegations are not enough[;]" and "even allegations of reprehensible, objectionable, and offensive conduct have been rejected as insufficient to state a claim for [IIED]." *Id.* (alterations added; quotation marks omitted; quoting *Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004)).

The hurling of "humiliating language, vicious verbal attacks, [and] racial epithets[,]" including the n-word — while "extremely reprehensible" — do not "reach[] the level of

Case 1:24-cv-21990-CMA   Document 41   Entered on FLSD Docket 10/02/2024   Page 11 of 11

CASE NO. 24-21990-CIV-ALTONAGA/Reid

outrageousness and atrociousness" required for an IIED claim. *Lay v. Roux Lab'ys, Inc.*, 379 So. 2d 451, 452 (Fla. 1st DCA 1980); *see, e.g.*, *Williams*, 877 So. 2d at 870; *cf. Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1574 n.2, 1575 n.7 (finding various acts of racial harassment, including "hanging a rope 'noose' over [an employee's] work station[,]" did not "rise to the level of extremity or outrageousness required to sustain" a claim for IIED (alterations added; quotation marks and citations omitted)); *but see Nims v. Harrison*, 768 So. 2d 1198, 1201 (Fla. DCA 1st 2000) (holding allegations involving "threats by the defendant to kill the plaintiff[] and to rape the plaintiff's children[,]" sufficiently outrageous to state a claim for IIED (alterations added)).

Against this backdrop, the Court agrees with Defendant. Plaintiff fails to state a claim of IIED. Defendant's conduct, while reprehensible, does not rise to the level of "outrageous" and "utterly intolerable" — at least as it has been defined for decades by courts applying Florida law. *LeGrande*, 889 So. 2d at 994 (citation omitted).

## IV.  CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion **[ECF No. 34]** is **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** in Miami, Florida this 2nd day of October, 2024.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record